

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/AL
F.#2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 2, 2011

By Hand Delivery and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Roger Califano
            Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for September 8, 2011. For the reasons set forth below, the government respectfully asks the Court to sentence the defendant within the advisory Guidelines range of 24 to 30 months.

I.   Background

      On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant and thirty-eight others with a variety of offenses, including racketeering conspiracy, based on their leadership of, membership in and association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively). (Docket Entry No. 1.)

      In the indictment, the defendant was alleged to be an associate within the Colombo family, and he was charged in Count One with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), including the following predicate racketeering acts ("RAs"): money laundering conspiracy (RA 19), operating two separate illegal gambling business (RAs 26 and 31) and extortionate collection of credit conspiracy (RA 38). (Id. ¶¶ 16-18, 55, 76, 82, 99-102.) In addition, the defendant was charged in separate counts with money laundering conspiracy (Count Fifteen), two counts of illegal gambling (Counts Thirty-

One and Thirty-Seven), extortionate collection of credit conspiracy (Count Forty-Four) and extortionate collection of credit (Count Forty-Five)  (Id. ¶¶ 205, 221, 229, 236-37.)

On January 20, 2011, the indictment was unsealed and the defendant was arrested.  (Docket Entries Nos. 2, 79.)  On June 1, 2011, the defendant pled guilty, pursuant to a plea agreement, before the Honorable Ramon E. Reyes, Jr.  (Docket Entry No. 425.)  The defendant pled guilty to Count One and allocuted to Racketeering Acts Twenty-Six and Thirty-Eight.  (Presentence Investigation Report ("PSR") ¶¶ 1-3.)

II. Discussion

The government respectfully submits that, in this case, a sentence within the advisory Guidelines range is appropriate in light of all relevant factors, including the nature and characteristics of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public.

A. Legal Standard

The Sentencing Guidelines are advisory, not mandatory.  United States v. Booker, 125 S. Ct. 738, 764-65 (2005).  However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence.  Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the district court] may not presume that the Guidelines range is reasonable.  [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

    B.    <u>The Guidelines Range Is 24 to 30 Months</u>

The Probation Department has determined that the adjusted offense level is 18, the defendant is in Criminal History category I, and the advisory Guidelines range of imprisonment is 27 to 33 months. (PSR ¶¶ 23-53, 83.) The defendant has not objected to this determination.

The government agrees with this determination, except that the government is prepared to move for an additional one-level decrease in the applicable sentencing range. As the Court is aware, a number of defendants in this case, including the present defendant, have pled guilty pursuant to plea agreements in which the government agreed to recommend an additional two-level reduction, pursuant to U.S.S.G. § 5K2.0, to the advisory Guidelines range if all "covered defendants" listed in the plea agreements entered guilty pleas by a certain date and the pleas were accepted by a United States District Judge. At this time, seven "covered defendants" have not pled guilty, and therefore, the government declines to move for a two-level reduction. However, in light of the guilty pleas entered by numerous covered defendants, the government respectfully submits that a one-level reduction is warranted. If the Court agrees, the adjusted offense level would be 17 and the advisory Guidelines range would be 24 to 30 months.

    C.    <u>A Sentence Within the Guidelines Range Is Appropriate In This Case</u>

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range is appropriate in this case, and a more lenient sentence is not warranted.

    1.    <u>The Natures and Circumstances of the Offenses</u>

The defendant has been convicted of racketeering conspiracy, including, as racketeering acts, gambling and extortion, in connection with the Colombo family. These are serious crimes that warrant a serious punishment. 18 U.S.C. § 3553(a)(1).

First, the Colombo family is a dangerous criminal enterprise that uses violence, including murder, to further its interests. (PSR ¶¶ 9-11.) The defendant's criminal association with the Colombo family reflects his commitment to its violent goals and enabled him to commit the gambling and extortion offenses of conviction. For example, the defendant was able to operate his lucrative illegal gambling businesses free from

-3-

interference by other criminals because he was protected by the Colombo family. In addition, when a gambling customer failed to timely pay a gambling loss, the violent reputation of the Colombo family, and specifically the Colombo family members who protected the defendant, enabled the defendant to obtain payment by extortion, that is, through the credible threat of violence.

Second, the defendant's gambling crimes are serious in themselves, and also reflect his commitment to a life of crime. In this case, the defendant operated a lucrative bookmaking business and helped government cooperators set up not one but two separate gambling clubs, as alleged in Racketeering Acts Twenty-Six and Thirty-One. The defendant advised in the establishment of the clubs, helped manage them, furnished necessary supplies (such as poker tables and chips), and actually oversaw poker games at the clubs. (PSR ¶¶ 12-13.) In other words, gambling was his profession. Because illegal gambling operations allow dangerous criminal organizations such as the Colombo family to earn money, gambling is necessary for their survival. Indeed, gambling is among the primary ways in which organized crime families generate income. And, because gambling inevitably leads to loansharking and violent debt collection, this crime is even more serious than it may at first appear.

Third, the defendant's crime of extortion demonstrates the link between gambling and violence. The defendant committed this crime by stealing the car of a victim who owed him a gambling debt. The defendant admitted to one of his co-defendants that he had been attempting to obtain payment from the victim for a month when he happened upon the victim exiting his car to buy cigarettes. The defendant then took the victim's car, returning it only after more senior members of the Colombo family discussed the debt with another crime family and the victim agreed that he would pay the debt. Although the defendant attempts to minimize this crime by arguing that he merely "took collateral" from the victim (Def.'s Stg. Ltr. at 4), it is clear that this was an extortion and that the victim had no choice but to repay the money or lose his car. Of course, gambling debtors who do not own expensive cars often face a far more dire choice.

In light of the foregoing, the government respectfully submits that the nature and circumstances of the offenses warrant a sentence within the advisory Guidelines range.

2.  <u>The Defendant's History and Characteristics</u>

The defendant's history and characteristics indicate that he is committed to a life of crime, that a sentence within the Guidelines range is appropriate, and that a more lenient sentence is not. 18 U.S.C. § 3553(a)(1).

Although the defendant is only 31 years old, he is a long-time associate of organized crime, and he has two prior convictions. First, in 2001 he was arrested and convicted based on his involvement in a "wire room" gambling operation in which an office was equipped with telephone lines used to receive bets from customers. (PSR ¶¶ 49-50.) The defendant and others managed this gambling operation and oversaw its daily business. (<u>Id.</u> ¶ 50.) Second, in 2009 the defendant was arrested and charged with two counts of criminal possession of a weapon in the fourth degree, and in 2010 he was convicted in that case of disorderly conduct. (PSR ¶¶ 51-52.)

In addition to these convictions, the defendant has demonstrated a commitment to crime that should be taken into account at sentencing. In particular, and as noted above, the defendant operates his illegal gambling businesses, and has committed extortion, under the auspices of the Colombo family. To obtain the this benefit, the defendant made $5,000 (and on occasion $10,000) tribute payments at Christmastime to high-level members of the Colombo family. Furthermore, although the defendant is not yet an inducted member of the Colombo family, high-level members of the Colombo family, including former street-boss Thomas Gioeli, co-defendant and underboss Benjamin Castellazzo and various captains, among others, received significant proceeds from the defendant's gambling businesses, and the family therefore has an interest in protecting those businesses and in ensuring that Califano's victims pay him.

Based upon these facts, the government respectfully submits that the defendant's history and characteristics indicate that a sentence within the advisory Guidelines range is appropriate in this case.

### 3. Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

A sentencing within the advisory Guidelines range is necessary to reflecting the seriousness of the offense, promote respect for the law and providing just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offenses -- operating illegal gambling businesses to earn money and committing extortion to collect debts -- are serious crimes that are critical to the success of organized crime families and that merit a serious punishment. In addition, by engaging in a life of crime under the auspices of the Colombo family -- after he has twice been convicted of crimes -- the defendant has demonstrated that he has little respect for the law. This is further demonstrated by his positive drug tests while on pretrial release. (PSR ¶ 68.) A sentence below the advisory Guidelines range would therefore be insufficient to serve these important purposes of sentencing.

### 4. Affording Deterrence and Protecting the Public

It is clear, based on the facts set forth above, that a sentence within the advisory Guidelines range is necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Both considerations support a Guidelines sentence.

The defendant's prior arrests and convictions did not serve the purpose of specific deterrence. In particular, the lenient sentences imposed in the defendant's earlier cases -- both of which resulted in conditional discharges (PSR ¶¶ 49, 51) -- did not deter or otherwise prevent the defendant from committing crimes. In fact, they did not deter him from committing the very crime underlying one of his prior convictions: promoting gambling. (Id. ¶¶ 49-50.) Instead of being deterred by his 2001 conviction for that crime, the defendant continued to pursue a career in gambling backed by organized crime. On November 27, 2009, the defendant ("RC") discussed his operation of a gambling business with a cooperating witness ("CW") in a consensually recorded conversation. More specifically, a portion of the conversation, a copy of which is enclosed, concerned a gambling business that the defendant operated with Manny Favuzza, the son of co-defendant Emanuele

Favuzza, immediately after the defendant was arrested for gambling:

    CW:   Now, what actually happened with uh, him?

    RC:   This is what happened.  He was, he was absolutely doing nothing.  Nothing.  Didn't know anything about anything.  He started staying with me.  Everybody was abusing him, so he started staying with me.

    CW:   Oh, he was hanging out with you?

    RC:   He started staying with me, after everybody was abusing him.  I took a liking into him, you know what I'm saying?  We were friends, we were together every day.  I made everybody stop abusing him.  I made him fucking earn money.  I get locked up with the sports, whatever, I come out.  My father this and--

    CW:   Oh, this was back then.

    RC:   My father this and that and nobody wants to do nothing.  I tell him, "Manny, listen.  Go to your father.  Maybe youse get a customer, a couple of customers, I'll put my customers up, you do all the running around, and I'll give you a percentage."  "Yeah yeah yeah yeah yeah," his father was jumping up and down, happy as hell, this and that.  The outcome was, I put it together, I put Manny as the front man so every one of my customers know, "Listen, I'm still here.  But I'm giving youse the okay to deal with this kid.  It's me.  I just can't be physically around the telephones, this and that."  He never brings up one customer.  So now we're making -- me and him split, like, 70 thousand.

    CW:   So I mean he's riding off of your customers?

    RC:   Yeah, we split 70 thousand one football season.  Which means -- that was $140,000, 25 and 25.  His father made 140 plus his 70 -- is over $200,000.

    CW:   Why'd the father make so much?

> RC: Cause the father had the, the office and he was doing everything -- our office was shut down.
>
> CW: Oh, you were going through his office?
>
> RC: Yeah, Moe and everybody got pinched. So -- anyways, they madeover a quarter of a million dollars, him and his father.
>
> CW: Off of your customers?
>
> RC: With no customers.

This recording makes clear that the defendant operated a gambling business upon his release from a gambling arrest; that he operated that business in conjunction with Emanuele Favuzza, a long-time associate (and now member) of the Colombo family; that the defendant installed Favuzza's son as the face of the operation so that the defendant would not "be physically around the telephones"; that the business generated $280,000 during just one football season; and that the defendant kept twenty-five percent of that football season's proceeds -- $70,000 -- for himself. In light of these facts, a sentence within the Guidelines range is necessary to promote specific deterrence.[1]

The defendant's other prior conviction, for disorderly conduct, also indicates that he needs to be specifically deterred from committing crimes. In that case, the defendant was arrested in 2009 and was originally charged with two counts of criminal possession of a weapon. (PSR ¶ 52.) Because gambling inevitably leads to loansharking (i.e., lending money to enable gamblers to place bets with the implicit threat of violence if the gamblers cannot repay those loans) and -- as demonstrated in this very case -- extortion, a sentence within the Guidelines range is necessary to deter the defendant not only from operating gambling businesses, but also from engaging in other, more violent crimes, including crimes involving weapons. Relatedly, a sentence within the Guidelines range is necessary to protect the public from the defendant's future crimes, which his prior, lenient sentences did not do.

The defendant now states that "[a]rmed with . . . the life lessons learned from his arrest and punishment in the

---

[1] These facts also further demonstrate that the defendant lacks respect for the law and that a sentence within the Guidelines range is necessary to promote such respect.

instant case, [he] will be prepared to forge a successful, law abiding life." (Def.'s Stg. Ltr. at 4.) However, his conduct following the lenient sentences imposed in prior cases belies that argument, and indicates that a lenient sentence in this case will not serve the important purposes of deterrence and protecting the public.

In addition, a sentence within the advisory Guidelines range is necessary in order to deter others who, like the defendant, are in a position to choose between a law-abiding life and a life of crime. At a July 2009 sentencing of a Colombo family captain, the Honorable Jack B. Weinstein imposed a sentence of 120 months, and observed the following:

> I believe that under these circumstances, ten years is a sentence that is appropriate, not too long, not too great, and anything less would not send a message. The people, the youngsters in this city have to understand that they cannot join this organization and that when they do they destroy their lives.

United States v. Uvino, 07 CR 725 (JBW). Although in this case the government is not seeking a sentence nearly as severe -- and emphatically does not seek a sentence at any particular point within the Guidelines range or an above-Guidelines sentence -- the government respectfully submits that a sentence within the Guidelines range is necessary to deter people in the defendant's position from committing crimes and, particularly, from getting involved in organized crime in the first instance.

C. A Fine Within the Guidelines Range Is Warranted

The government also asks the Court to impose a fine. Section 5E1.2(a) of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In this case, the advisory Guideline range calls for a fine between $6,000 and $400,000. (PSR ¶ 91.)

Although the defendant provided information to the Probation Department suggesting that he is unable to pay a fine (id. ¶¶ 76-81), the evidence indicates otherwise. In particular, as noted, consensual recordings indicate that the defendant personally earned $70,000 in just one football season and that he routinely paid the Colombo family administration up to $10,000 at Christmastime from proceeds of his illegal gambling businesses. Therefore, it is clear that he earned significant proceeds from those businesses.

In light of the defendant's long participation in multiple illegal gambling operations, the defendant cannot sustain his burden of showing an inability to pay a fine. United States v. Tocco, 135 F.3d 116, 133 (2d Cir. 1998) (defendant bears this burden). Therefore, it is now appropriate that he "reimburse society for the drain on economic resources caused by [his] li[fe] of crime and for the high costs of [his] own necessary imprisonment." United States v. Sessa, 821 F. Supp. 870, 875 (E.D.N.Y. 1993) (Weinstein, J.).

III. Conclusion

In this case, given all of the facts and circumstance discussed above, a sentence below the Guidelines range would not satisfy the statutory purposes of sentencing. United States v. Cutler, 520 F.3d 136, 154 (2d Cir. 2008) (conclude "that there were errors in certain of the district court's Guidelines applications and in its departure decisions; that the sentences imposed did not properly interpret certain of the sentencing factors that the court was required to consider under 18 U.S.C. § 3553(a), such as just 'punishment' and deterrence of others; and that some of the court's rationales would promote disrespect for the law."). Therefore, and for all of the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 24 to 30 months.

>Respectfully submitted,
>
>LORETTA E. LYNCH
>United States Attorney
>
>By:     /s/
>Elizabeth A. Geddes
>Allon Lifshitz
>Assistant U.S. Attorneys
>(718) 254-6430/6164

Enclosure

cc: Clerk of the Court (KAM) (by ECF)
    Sanford Talkin, Esq. (by ECF and Federal Express)
    Michelle Espinoza, Senior U.S. Probation Officer (by email)